IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SOWMYA VALINA,<br><br>Plaintiff,<br><br>vs.<br><br>MAUI SNORKEL CHARTERS, INC.; ALEX J. SIDDONS; M/V NO KA OI,<br><br>Defendants. | Civ. No. 25-00049 HG-KJM |

**ORDER DENYING DEFENDANT MAUI SNORKEL CHARTERS, INC.'S AND DEFENDANT ALEX J. SIDDONS' MOTION FOR SUMMARY JUDGMENT (ECF No. 74)**

On October 3, 2024, Plaintiff Sowmya Valina and her husband went on a snorkel tour aboard the Defendant Vessel M/V No Ka Oi ("Vessel"). The tour was operated by Defendant Maui Snorkel Charters, Inc. A total of four passengers and two crew members were aboard the Vessel. The Vessel was captained by Defendant Alex J. Siddons ("Defendant Siddons").

The snorkel tour departed from Kihei Boat Ramp and went to Molokini Crater on the island of Maui. The Vessel arrived at Molokini Crater and did drift snorkeling; it was not anchored to a buoy.

Plaintiff Valina had never snorkeled before. Plaintiff jumped into the ocean wearing her snorkel gear as instructed by the crew. After jumping into the ocean, water went into Plaintiff's nose and mouth and she felt like she could not breathe.

There is a dispute as to the actions by Plaintiff and the crewmembers after she got into the water, but the Parties agree that Plaintiff ultimately held onto the stern ladder of the Vessel next to the outboard engine.

Plaintiff was submerged in the ocean to her chest while the upper part of her body was out of the water holding onto the stern ladder. Plaintiff's legs were in the water near the engine's propellers. The Parties agree that Defendant Siddons activated the engine and its propellers while Plaintiff held onto the ladder with her legs in the water. The engine's propellers caused severe damage to Plaintiff's left ankle and foot.

The Vessel returned to Kihei Boat Ramp and Plaintiff was hospitalized and received treatment for her injuries.

Eleven days prior to departing on the snorkel tour, Plaintiff signed a document entitled "Maui Snorkel Charters Waiver Form." The form states that "THIS IS A RELEASE OF YOUR RIGHTS TO SUE MAUI SNORKEL CHARTERS, INC. AND IT'S [sic] EMPLOYEES, AGENTS AND ASSIGNS FOR PERSONAL INJURIES OR WRONGFUL DEATH THAT MAY OCCUR DURING THE FORTHCOMING ACTIVITY AS A RESULT OF THE INHERENT RISKS ASSOCIATED WITH SNORKELING OR AS A RESULT OF NEGLIGENCE."

Defendants have filed a Motion for Summary Judgment seeking judgment in their favor on the basis of the signed waiver form. Defendants claim that they cannot be held liable for Plaintiff's injuries because she signed a waiver that released them from

liability for maritime negligence.

Plaintiff opposes Defendants' Motion for Summary Judgment.

Defendants' Motion for Summary Judgment (ECF No. 74) is **DENIED.**

Defendants may not rely on the release and waiver of liability signed by Plaintiff as a defense to liability for maritime negligence as a matter of law.

There are genuine disputes of material fact as to Plaintiff's maritime negligence claims that must be decided at trial.

## PROCEDURAL HISTORY

On February 4, 2025, Plaintiff filed the Complaint. (ECF No. 1).

On May 27, 2026, Defendants filed a Motion for Summary Judgment and a Concise Statement of Facts in Support. (ECF Nos. 74, 75).

On May 29, 2026, the Court issued a briefing schedule. (ECF No. 76).

On June 15, 2026, Plaintiff filed its Opposition and Concise Statement in Opposition. (ECF Nos. 78, 79).

On July 1, 2026, Defendants filed their Reply and Concise Statement in Support of their Reply. (ECF Nos. 80, 81).

On July 7, 2026, Plaintiff filed a Motion for Leave to File a Sur-Reply. (ECF No. 82).

On July 8, 2026, the Court granted Plaintiff's Motion for Leave to File a Sur-Reply. (ECF No. 83).

Also on July 8, 2026, Plaintiff filed her Sur-Reply. (ECF No. 84).

On July 17, 2026, the Court set a hearing on Defendants' Motion for Summary Judgment. (ECF No. 87).

On September 14, 2026, the Court held a hearing on Defendants' Motion for Summary Judgment. (ECF No. 95).

## BACKGROUND

### PLAINTIFF SIGNED A WAIVER OF LIABILITY FORM PRIOR TO THE SNORKEL TOUR

On September 23, 2024, Plaintiff Sowmya Valina and her husband Venkata Sandeep Katragadda booked a snorkel tour to Molokini Crater with Defendant Maui Snorkel Charters, Inc. via its website. (E-mail confirmation of Molokini Snorkel Adventure, attached as Ex. B at pp. 1-4 to Def.'s Concise Statement of Facts ("CSF"), ECF No. 75-3).

At the time of the booking, Plaintiff electronically signed a document entitled "Maui Snorkel Charters Waiver Form." (Id. at pp. 5-7). The Waiver Form contains, in part, the following paragraphs:

> THIS IS A RELEASE OF YOUR RIGHTS TO SUE MAUI SNORKEL CHARTERS, INC. AND IT'S [sic] EMPLOYEES, AGENTS AND ASSIGNS FOR PERSONAL INJURIES OR WRONGFUL DEATH THAT MAY OCCUR DURING THE FORTHCOMING ACTIVITY AS A RESULT OF THE INHERENT RISKS ASSOCIATED WITH SNORKELING OR AS A RESULT OF NEGLIGENCE.
>
> (Place your initials next to each of the following sections.)
>
> 1. IT IS MY INTENTION BY THIS INSTRUMENT TO EXEMPT AND RELEASE MAUI SNORKEL CHARTERS, INC. AND ALL RELATED ENTITIES AS DEFINED ABOVE FROM ALL

> LIABILITY WHATSOEVER FOR PERSONAL INJURY, PROPERTY DAMAGES, AND WRONGFUL DEATH CAUSED BY NEGLIGENCE.

(Id. at p. 5).

**ON OCTOBER 3, 2024, PLAINTIFF WAS INJURED DURING THE SNORKEL TOUR**

On October 3, 2024, Plaintiff and her husband drove to the Kihei Boat Ramp on the island of Maui to take part in the snorkel tour they booked to be conducted by Defendant Maui Snorkel Charters, Inc. ("Defendant Maui Charters"). (Declaration of Plaintiff at ¶ 5, attached as Ex. F to Pl.'s CSF, ECF No. 79-2).

At approximately 7:00 a.m., Plaintiff met Defendant Maui Charter's crewmember Jennifer Pattison at the check-in point for the tour aboard Defendant Maui Charter's Vessel M/V No Ka Oi ("Defendant Vessel"). (Id.).

The Vessel is a 14 gross ton Rigid Inflatable Boat with an aluminum hull and was powered by two 300hp Mercury outboard engines with no propeller guards. (Def.'s Reply at p. 15, ECF No. 80; Ex. H at ¶ 6, ECF No. 79-4).

Plaintiff and her husband boarded the Vessel and met Defendant Alex Siddons, who was the captain. (Pl.'s Decl. at ¶ 5, attached as Ex. F to Pl.'s CSF, ECF No. 79-2).

There were two other passengers on the Vessel for the snorkel tour. (Id. at ¶ 6). Defendant Siddons, Crewmember Pattison, Plaintiff and her husband, and the two other passengers departed from the Kihei Boat Ramp on the Defendant Vessel and headed toward Molokini Crater. (Id.)

Plaintiff relied upon the instructions of Defendant Maui Chaters and its crew for the snorkel tour. (Id.) Plaintiff informed both Crewmember Pattison and Defendant Siddons that she had never snorkeled before. (Id. at ¶ 7).

When the Vessel arrived at the crater, Plaintiff was told to put on her snorkel gear on the Vessel and she followed the instructions. (Id.) Plaintiff was instructed by Crewmember Pattison to jump into the water from the right-side middle of the boat with her gear on. (Id.) Plaintiff followed the instruction but "got water in [her] nose and mouth and felt like [she] could not breathe." (Id.)

The Parties dispute what other instructions Plaintiff was given and whether Plaintiff returned on board the Vessel prior to using the ladder.

The Parties agree, however, that Plaintiff went to the back of the boat to use the ladder next to the outboard engine. (Id. at ¶ 8). The Parties also agree that Plaintiff "asked [Crewmember Pattison] whether the big outboard engine next to the ladder was on because [she] needed to put [her] hand on it in order to step down the ladder. [Crewmember Pattison] assured [Plaintiff] that the engine was turned off and told [Plaintiff] not to worry about it." (Id.; Def.'s CSF in Reply at ¶ 32, ECF No. 81).

The Parties disagree as to most of the remaining actions or inactions by both Defendant Siddons and Crewmember Pattison once Plaintiff was on the ladder.

The Parties agree that while Plaintiff held onto the ladder with her legs in the water, Defendant Siddons "energized" the engine and engaged the engine's propeller blades. (Deposition of Defendant Alex Siddons at p. 62, attached as Ex. G to Pl.'s CSF, ECF No. 79-3; Pl.'s Decl. attached as Ex. F at ¶ 11, ECF No. 79-2; Pl.'s CSF at ¶ 38, ECF No. 79; Def.'s CSF in Reply at ¶ 38, ECF No. 81).

The Parties agree that Plaintiff sustained injuries to her left foot and ankle as a result of being struck by the propeller blades from the outboard engine. (Pl.'s Decl. at ¶ 12, ECF No. 79-2). Plaintiff required surgery and spent three days in the Intensive Care Unit at Maui Memorial Medical Center before flying home to California on October 6, 2024. (Id. at ¶¶ 19-21).

Plaintiff filed a Complaint asserting a claim of "maritime negligence" against the snorkel tour operator Defendant Maui Snorkel Charters, Inc., the Vessel captain Defendant Alex J. Siddons, and the Vessel M/V No Ka Oi. (Complaint, ECF No. 1).

Defendants Maui Charters and Siddons asserted a defense based on the release and waiver signed by Plaintiff prior to boarding the Vessel. (Answer, ECF No. 17).

Defendants Maui Charters and Siddons seek summary judgment, arguing that they cannot be held liable for Plaintiff's claim for maritime negligence because she signed the release and waiver.

Plaintiff argues the release and waiver is void as a matter of law. Plaintiff also argues there are genuine issues of disputed fact that preclude a finding of summary judgment.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To defeat summary judgment there must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1997).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. The moving party need not produce any evidence at all on matters for which it does not have the burden of proof. Celotex, 477 U.S. at 325. The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. That burden is met by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. Id.

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence

of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979). The opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the non-moving party. State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989). Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324. The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial. Fed. R. Civ. P. 56(e); T.W. Elec. Serv., 809 F.2d at 630. The opposing party cannot rest on mere allegations or denials. Fed. R. Civ. P. 56(e); Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir. 1994). When the non-moving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact. Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993); see also Nat'l Steel Corp. v. Golden Eagle Ins. Co., 121 F.3d 496, 502 (9th Cir. 1997).

## ANALYSIS

### I. There Is Maritime Law Jurisdiction Over Plaintiff's Negligence Claims

A party seeking to invoke federal maritime jurisdiction pursuant to 28 U.S.C. § 1333(1) for a tort claim must satisfy two conditions. First, maritime tort jurisdiction has a locality requirement. Grubart v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995). The plaintiff must demonstrate that the tort occurred on navigable water or demonstrate that the injury suffered on land was caused by a vessel on navigable water. Id.

Second, maritime tort jurisdiction requires that the tort be connected with traditional maritime activity. Id.

The Parties agree that federal maritime jurisdiction applies in this case. (Pl.'s Opp. at pp. 11-12, ECF No. 78). The Parties agree that Plaintiff was injured while on a snorkel tour conducted by Defendant Maui Charters, Inc. The Parties agree that Plaintiff was aboard Defendant vessel the M/V No Ka Oi ("Vessel"), which was captained by Defendant Alex J. Siddons.

The Parties agree the Vessel was on navigable water near Maui, Hawaii, at the time of the injury, and that the injury occurred during a snorkel tour, a traditional maritime activity.

### II. Maritime Negligence

A claim for maritime negligence requires the plaintiff to prove (1) duty; (2) breach; (3) causation; and (4) damages.

Samuels v. Holland Am. Line-USA Inc., 656 F.3d 948, 953 (9th Cir. 2011). The duty of care that applies to negligence in maritime cases is that of reasonable care under the circumstances. Peters v. Titan Nav. Co., 857 F.2d 1342, 1345 (9th Cir. 1988). The degree of care that is required and the determination of what is reasonable under the circumstances is particular to each case. In re Catalina Cruises, Inc., 137 F.3d 1422, 1425 (9th Cir. 1998).

Plaintiff claims that Defendants breached their duty of care in a number of ways, including:

> "a. failing to provide Plaintiff with a safe place to participate in the snorkeling and boating activity advertised and sold to Plaintiff;
>
> b. failing to provide Plaintiff with a safe means of accessing the vessel;
>
> c. energizing and starting the engines of the Vessel while Plaintiff was located directly adjacent to the propellers of the engines and the Vessel;
>
> d. failing to properly supervise Plaintiff and the other passengers;
>
> e. failing to properly train the crew of the Vessel;
>
> f. failing to adequately man the Vessel;
>
> g. failing to adopt adequate safety protocols, including lock out and tag out and pre-start 'all clear' procedures for the Vessel engines when passengers were in the water;
>
> h. failing to provide proper first aid to Plaintiff following her accident;
>
> i. failing to install modern cameras and other detection devices and safety features designed to prevent this type of propeller injury; and

j. violating laws, statutes and regulations enacted to promote safety."

(Complaint at ¶ 16, ECF No. 1).

Defendants seek to preclude Plaintiff from bringing her maritime negligence claim on the basis that Plaintiff signed a waiver and release regarding liability as to Defendant Maui Snorkel Charters, Inc. and its agents.

Plaintiff seeks to preclude the defense and the introduction of the liability waiver at trial. Plaintiff argues that the waiver and release is unenforceable.

## III. Limitations On The Enforceability Of Liability Waivers In Certain Maritime Negligence Cases

The Parties raise various questions about the enforceability of the signed waiver and release at issue in this case.

The Parties raise whether the waiver is void as a matter of law pursuant to the following bases:

(1) the federal maritime statute that limits the enforceability of certain liability waivers in maritime accidents;

(2) the common law limitation on liability waivers for "common carriers";

(3) the Hawaii state statute that limits the enforceability of liability waivers for recreational activities; and

(4) the common law limitation to the enforceability of liability waivers in cases of gross negligence.

Defendant argues that none of the limitations on liability waivers apply in this case.

### A. Federal Maritime Code Provision Limiting Certain Liability Waivers

Title 46, Section 30527 of the United States Code voids certain liability waivers for personal injuries in federal maritime cases.

The statute provides as follows:

**Provisions limiting liability for personal injury or death,** (effective December 23, 2022):

**(a) Prohibitions.—**

**(1) In general.–**The owner, master, manager, or agent of a vessel transporting passengers between ports in the United States, or between a port in the United States and a port in a foreign country, may not include in a regulation or contract a provision limiting–

**(A)** the liability of the owner, master, or agent for personal injury or death caused by the negligence or fault of the owner or the owner's employees or agents;

or

**(B)** the right of a claimant for personal injury or death to a trial by court of competent jurisdiction.

**(2) Voidness.–**A provision described in paragraph (1) is void.

46 U.S.C. § 30527.

Section 30527 does not void the liability waiver in this case. It is undisputed that the Vessel did not transport passengers "between ports in the United States, or between a port in the United States and a port in a foreign country." Id.

The Parties agree that the Vessel transported Plaintiff and the three other passengers from Kihei Boat Ramp to Molokini Crater on the open ocean and that it returned to the same port at Kihei Boat Ramp.

The Vessel did not travel between two different ports as is required for Section 30527 to apply. See Ehart v. Lahaina Divers, Inc., 92 F.4th 844, 853 (9th Cir. 2024) (finding that Section 30527 did not apply to void a liability waiver for a plaintiff who boarded a vessel that transported passengers both from and back to a Lahaina harbor).

**B. Limitation On Enforceability Of Liability Waivers for "Common Carriers"**

The Court finds it unnecessary to reach the question of the applicability of liability waivers for "common carriers" in this case.

**C. Whether The Liability Waiver Violates Hawaii Law**

**1. State Law Can Be Used To Supplement Federal Maritime Law**

As explained above, this case falls under federal maritime jurisdiction. Federal maritime law is a type of common law and it generally governs the substantive liability standards in an accident on navigable waters. Yamaha Motor Corp. v. Calhoun, 516 U.S. 199, 206 (1996). The exercise of federal maritime jurisdiction, however, does not result in the automatic displacement of all state laws in a maritime negligence case.

Id. State law may be applied to supplement federal maritime law where no applicable admiralty rule exists and where local and state interests predominate. In re Luxury Jet Ski Rentals, 2024 WL 3367530, *4 (S.D. Cal. July 9, 2024) (citing Am. Dredging Co. v. Miller, 510 U.S. 443, 447 (1994)). State laws that do not conflict with general maritime law may be applied in the context of admiralty jurisdiction. Rigsbee v. City & Cnty. of Honolulu, 2018 WL 5017610, *4-*5 (D. Haw. Oct. 16, 2018).

Federal maritime common law does not specifically preclude liability waivers in the context of recreational water activities. See Rodriguez v. Seabreeze Jetlev LLC, 2022 WL 3639305, *6 (N.D. Cal. June 23, 2022) (collecting cases). Some courts have concluded that because federal maritime law does not preclude such waivers, the waivers are enforceable so long as the waiver (1) is clear and unambiguous, (2) is not inconsistent with public policy, and (3) is not a contract of adhesion. In re Luxury Jet Ski Rentals LLC, 2024 WL 3367530, at *8.

Other courts have ruled that the state law may restrict the application of liability waivers in maritime negligence cases if there is no conflict between general maritime law and the state law. Hambrook v. Smith, Civ. No. 14-000132 ACK-BMK, 2015 WL 3480887, *7 n.8 (D. Haw. June 2, 2015).

### 2. Hawaii Law Limits The Enforceability Of Liability Waivers In Recreational Activities

Under Hawaii law, liability waivers are enforceable unless they violate a statute, are contrary to substantial public

interest, or are contracts of adhesion. Courbat v. Dahana Ranch, 141 P.3d 427, 437-38 (Haw. 2006).

The Hawaii Revised Statutes contain a statute that specifically limits the enforceability of liability waivers in the contract for participation in recreational activities. Hawaii Revised Statutes Section 663-1.54 provides, as follows:

> (a) Any person who owns or operates a business providing recreational activities to the public, such as, without limitation, scuba or skin diving, sky diving, bicycle tours, and mountain climbing, shall exercise reasonable care to ensure the safety of patrons and the public, and shall be liable for damages resulting from negligent acts or omissions of the person which cause injury.
>
> (b) Notwithstanding subsection (a), owners and operators of recreational activities shall not be liable for damages for injuries to a patron resulting from inherent risks associated with the recreational activity if the patron participating in the recreational activity voluntarily signs a written release waiving the owner or operator's liability for damages for injuries resulting from the inherent risks. No waiver shall be valid unless:
>
> > (1) The owner or operator first provides full disclosure of the inherent risks associated with the recreational activity; and
> >
> > (2) The owner or operator takes reasonable steps to ensure that each patron is physically able to participate in the activity and is given the necessary instruction to participate in the activity safely.
>
> (c) The determination of whether a risk is inherent or not is for the trier of fact. As used in this section an "inherent risk":
>
> > (1) Is a danger that a reasonable person would understand to be associated with the activity by the very nature of the activity engaged in;

> (2) Is a danger that a reasonable person would understand to exist despite the owner or operator's exercise of reasonable care to eliminate or minimize the danger, and is generally beyond the control of the owner or operator; and
>
> (3) Does not result from the negligence, gross negligence, or wanton act or omission of the owner or operator.

Haw. Rev. Stat. § 663-1.54.

Plaintiff argues that the liability waiver at issue in this case is unenforceable because it violates the Hawaii statute. Plaintiff argues that Section 663-1.54 does not conflict with federal maritime law and may be used to restrict the use of liability waivers for maritime recreational activities in Hawaii waters.

Plaintiff relies on Hambrook v. Smith, Civ. No. 14-000132 ACK-BMK, 2015 WL 3480887, *7 n.8 (D. Haw. June 2, 2015). In Hambrook, another Judge in the Hawaii District Court ruled that Hawaii Revised Statutes Section 663-1.54 does not conflict with federal maritime law. The court found that Haw. Rev. Stat. § 663-1.54 supplements the federal common law in maritime accident cases occurring in Hawaii waters. Hambrook, 2015 WL 3480887, at *7, n.8; see also Hambrook, 2016 WL 4408991, at *26-*27 (D. Haw. Aug. 17, 2016).

The Court agrees with the ruling in Hambrook. The Hawaii statute does not conflict with federal maritime law. The Hawaii statute is more restrictive with respect to liability waivers, but it does not provide a contrary basis for relief or create a

different substantive standard for maritime negligence. Calhoun, 516 U.S. at 206; NextWave Marine Sys., Inc. v. M/V Nelida, 500 F.Supp.3d 1162, 1168 (D. Or. 2020) (explaining that state law may supplement federal maritime law when maritime law is silent or where a local matter is at issue, citing Floyd v. Lykes Bros. S.S. Co., 844 F.2d 1044, 1047 (3d Cir. 1988)).

Hawaii has a local interest in regulating recreational activities in its waters and public policy supports voiding blanket liability waivers for negligence. McKellar v. Outfitters Kauai, Ltd., 575 P.3d 38, *3 (Haw. App. 2025) (citing see S. Stand. Comm. Rep. No. 1537, in 1997 Senate Journal, at 1476 ("[T]his measure is necessary to more clearly define the liability of providers of commercial recreational activities by statutorily validating inherent risk waivers signed by the participants. Your Committee further finds that these inherent risk waivers require providers to disclose known risks to the participants, but these waivers do not extend immunity to providers for damages resulting from negligence.").

Defendant Maui Charters, Inc. provided Plaintiff with a snorkel tour that qualifies as a recreational activity as provided in Section 663-1.54(a).

Haw. Rev. Stat. § 663-1.54 voids the enforceability of the liability waiver for negligence in this case. The plain language of Section 663-1.54 expressly precludes a waiver of the recreational operator's liability for negligence. McKellar, 575

P.3d at *3; see King v. CJM Country Stables, 315 F.Supp.2d 1061, 1065–66 (D. Haw. 2004) (finding that "Section 663–1.54(a) explicitly precludes waiving liability for negligence."); see Mohler v. Kipu Ranch Adventures, LLC, 2014 WL 5817538, *6 (D. Haw. Nov. 7, 2014) (explaining Section 663-1.54 precludes waivers of liability for negligence, and the statute allows waivers only for damages resulting from "inherent risks" that have been fully disclosed to the customer but that an inherent risk is a question for the trier of fact and cannot be determined at summary judgment).

The liability waiver is void pursuant to Haw. Rev. Stat. § 663-1.54 and may not be presented as a defense to Plaintiff's claim for maritime negligence at trial.

## D. Limitation On Liability Waivers In Cases Of Gross Negligence

### 1. Liability Waivers For Gross Negligence Are Void

The Ninth Circuit Court of Appeals has definitively ruled that a party to a maritime contract cannot shield itself contractually from liability for gross negligence under federal maritime law. Royal Ins. Co. of Am. v. Sw. Marine, 194 F.3d 1009, 1016 (9th Cir. 1999).

An attempt to waive liability for gross negligence under federal maritime law is void and may not be raised as a defense at trial. Becker v. Tidewater Inc., 586 F.3d 358, 367 (5th Cir. 2009); Rodriguez, 2022 WL 3639305, at *7.

**2. Plaintiff Plausibly Alleged Gross Negligence In The Complaint**

Defendants argue that the limitation on the enforceability of liability waivers for claims of gross negligence should not apply in this case because they argue that Plaintiff did not plausibly allege a claim for gross negligence. Defendants argue that the Complaint only contains one count for "maritime negligence."

Plaintiff's Complaint does not contain a separate title or delineate a separate count for "gross negligence." A review of the Complaint, however, demonstrates that Plaintiff plausibly alleges sufficient facts to plead a claim for gross negligence. See Ace Am. Ins. Co. v. Accellion, Inc., 2022 WL 2341155, *5 (N.D. Cal. Apr. 11, 2022); Strickert v. Neal, 2015 WL 7737312, *7-*9 (D. Haw. Nov. 30, 2015) (finding the allegations in the complaint were sufficient to support a claim for gross negligence).

Under general maritime law, gross negligence is defined as "the intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, such a gross want of care and regard for the rights of others as to justify the presumption of willfulness and wantonness." Royal Ins. Co. of Am., 194 F.3d at 1015; see also Pancakes of Hawaii, Inc. v. Pomare Props. Corp., 944 P.2d 83, 90 (Haw. App. 1997) (explaining that the "element of culpability

that characterizes all negligence is in gross negligence magnified to a high degree as compared with that present in ordinary negligence”).

The Ninth Circuit Court of Appeals has explained that in federal maritime law “gross negligence is simply a point on a continuum of probability, and its presence depends on the particular circumstances of each case.” Royal Ins. Co. of Am., 194 F.3d at 1015; see Wallace v. Busch Ent. Corp., 837 F.Supp.2d 1093, 1101 (S.D. Cal. 2011) (explaining that “gross negligence is not so much a cause of action as it is a ‘limitation on the defense that is provided by a release.’”).

Here, the Complaint contains detailed allegations that Defendants intentionally failed to perform their duties in reckless disregard of the consequences. Specifically, Plaintiff alleges that Defendant Siddons intentionally started the engine without following proper safety protocols in reckless disregard of the consequences. The Complaint alleges:

> Defendant Siddons admitted that he had started the engines not knowing the Plaintiff (and others) were in the water adjacent to the engines. At no time while Plaintiff was in the water did she see Defendant Siddons or any other crew member check the stern of the vessel prior to starting the engines. Similarly, at no time did Plaintiff hear any warning about the engine being started. At no time was Plaintiff ever warned to stay clear of the engines or advised of any risk associated with the engines.

(Complaint at ¶ 12, ECF No. 1).

Plaintiff may proceed to trial on gross negligence because there are genuine disputes of material fact as to whether

Defendants were, in fact, grossly negligent. The Parties dispute many of the actions on the day of the accident including the instructions to Plaintiff and the other passengers, the safety protocols followed or not followed, and the alleged actions and inactions by Defendants Siddons and Crewmember Pattison. The questions of fact and whether they rise to the level of gross negligence are questions for the jury. Strickert, 2015 WL 7737312, at *9.

The liability waiver is void as to gross negligence and may not be presented as a defense to gross negligence at trial. Royal Ins. Co. of Am., 194 F.3d at 1016.

## CONCLUSION

Defendants' Motion for Summary Judgment (ECF No. 74) is **DENIED.**

Defendants may not rely on the release and waiver of liability signed by Plaintiff as a defense to liability to either maritime negligence or gross negligence.

There are genuine disputes of material fact as to Plaintiff's maritime negligence and gross negligence claims that must be decided at trial.

//

//

//

//

//

IT IS SO ORDERED.

DATED: September 16, 2026, Honolulu, Hawaii.

Helen Gillmor
United States District Judge